Nott, J.,
delivered the opinion of the court:
It is a well-settled principle that the individual debts of a partner cannot be charged to his firm without its consent, and that a member of a firm cannot be coerced into paying an alleged indebtedness in this manner without his consent. Therefore the question in all such cases is practically one of consent.
And when the question of consent comes to be investigated the partnership ceases to be an entity, and the inquiry ordinarily must be whether the individuals who composed the firm consented. If it were otherwise, that which is really an abstraction, the partnership, would become the entity, and that which is an entity, the rights of persons, would become the abstraction.
Consent may be shown in various ways — by agreement, by acceptance, by acquiescence. In the present case we think it established, for the following reasons:
i. The partner whose individual indebtedness was liquidated was not the partner who accepted the settlement and receipted for the balance stated. If the case were reversed, if the settlement had been brought about by the partner presumably benefited, he having his individual indebtedness discharged at the cost of his firm, a court would view the transaction with suspicion. But no such suspicion can attach to the act of the partner presumably injured by the settlement. When such a partner signs the firm-name to such a receipt it is as effective evidence of his individual acquiesence as if he wrote at the foot, “I consent,” and signed his individual name thereto. On the argument it was insisted that the receipt given in the name of the firm was not the act of the firm, because one partner cannot di *163 vert partnership funds to individual liabilities; and that it was not the act of the partner who gave the receipt, because it was given in the name of the firm. But we think that this technical analysis cannot be sustained, and that it is the duty of the court to rest its decision upon the substance rather than upon the form of the transaction. In substance, here the settlement made and receipt given in the name of the firm were the acts of the firm, but subject to the approval or ratification, express or implied, of the individual partners. And it also seems to us clear that the act of the partner Campbell in signing the receipt and accepting the voucher was his individual approval or ratification of the settlement which he had just effected in the name of his firm.
2. It was the right undoubtedly of the partner Rothwell to reject this settlement. Apparently the settlement was for his benefit, but possibly he owed the. District of Columbia nothing and the alleged overcharges were mistakes, or against them he held a valid set-off. He might well object to his firm paying a fictitious indebtedness with money which in part belonged to himself. We fully recognize his right to annul the transaction, and if he denied the individual indebtedness his right was as complete as if he were not the partner supposed to be benefited. All that he had to do was to write a letter within a reasonable time, in the name of the firm, notifying the defendant that the settlement of the 2d of July, 1875, was the individual act of Alberto Campbell, without authority of the firm of Campbell & Roth-well, and that the firm disavowed the transaction and intended to hold the District liable for the moneys thus withheld. Instead of so doing, Mr. Rothwell did nothing whatever. So far as the record discloses, he received the benefit of the settlement, first as an individual, in having his individual indebtedness discharged, and second as a partner, in sharing in the balance of $9,798.57 wrhich was paid to his firm. Having thus allowed the other contracting party to believe that a transaction, apparently for his benefit, was effected with his knowledge and approval, he is most certainly7 estopped from denying that the settlement was the authorized act of his firm.
3. So far as the firm, considered as a body corporate, is concerned, the court recognizes the fact that the unauthorized act of a partner may continue in its results and fruits to be his unauthorized act. But in this case it is not pretended that either *164 concealment or fraud was practiced upon the firm by the acting partner, and it is not denied that the firm accepted the certificate and received its proceeds. In the absence of concealment or fraud the firm is estopped from denying a transaction as to which it kept silence from the 2d day of July, 1875, when it received the certificate for $9,798.57, till the 31st day of March, 1883, when it filed its amended petition in this action.
It was also urged upon the argument that the settlement embodied upon the account of June 30, 1875, was not a final settlement between the parties, inasmuch as there were subsequent accounts, settlements, and payments for other services under the same contract. We are unable to perceive that this can help or affect the claimants’ case. It is one of the conveniences of mercantile usage that accounts remain open as to mistakes made or items omitted until the parties close them either by final' account stated or a final settlement effected. When that point is reached the contracting parties cannot reopen their accounts, and the statute of limitations begins to run. In the present case there is neither error nor omission. If all the accounts were still open and unsettled it would not affect the present question. The defendant’s demand against Rothwell would still be in the same plight in which we find it, and the claimants would still be responsible for its being there.
The judgment of the court is that the claimants recover of the defendant $1,608.10.